Good morning. May it please the Court, Murray Kamiansky on behalf of Casas-Castrillon. I just want to rebrief the case and I just want to go over some points for the Court to consider this morning. We believe the critical issue here is the issue of the convictions. The 1993 convictions for vehicle burglary and the 2000 conviction for California penal code violation 459. We contend that these convictions do not qualify as two crimes involving moral turpitude. I realize you're pro bono counsel, but I have a concern as to whether or not these issues were properly raised and preserved both before the BIA and certainly before us. There's, reading your opening blue brief, the entire discussion of the modified categorical approach that appears in the reply brief is at best implicit in the one paragraph, paragraph C on page 14, that raises these issues. So I'm troubled that the issue really hasn't been properly presented to us and it's not clear to me how the issue was raised before the BIA. I think, Your Honor, the response would be that in front of the BIA there was the issue of the 212 waiver and the BIA in its decision, I believe, sidestepped the 212 waiver issue by saying, I don't have it in front of me, by saying that even if the appellant was entitled to a 212 waiver, it wouldn't make much of a difference because there were two crimes of moral turpitude that are factored in here and he would be deportable under that statute. And then our contention under the recently decided case of Cenetos Cruz of this court was that he is not entitled to a stop time. I understand that aspect of it, but I don't see where the BIA was ever presented with an argument that they weren't crimes of moral turpitude. Indeed, the BIA says the respondent does not directly contest the immigration judge's conclusion that his crime was one involving moral turpitude. So how has there been any exhaustion of the issue? The BIA may not have explicitly been presented with that argument in front of them. There is an effective assistant of counsel that we've brought forward. Certainly when I've gone through the record and I've gone through the convictions and as my due diligence it occurred to me that there was absolutely no doubt that under 459 what he was convicted for, the 1993 conviction, he pled guilty, Casas pled guilty to second-degree vehicle burglary as the court knows and he was sentenced to only 180 days. He served only 82 days, thus making it a misdemeanor under the California Penal Code 17B under U.S.B. Bridgeforth of the Ninth Circuit. And that condition could not have stopped time under U.S.C. 1229BD1, contrary to the claims of the immigration judge and the BIA. He has been in custody for six, seven years. The first crime, in no way is it considered a crime of moral turpitude. This is given added weight by this court's decision in Sinaloa's Cruz. Well, I'm not sure I understand the reference to ineffective assistance. Is your argument that they should have raised it before the BIA that it wasn't a crime of moral turpitude? I believe they should. And therefore we should nonetheless go ahead and treat it as if it were exhausted? Have you filed a Lozada? Followed the Lozada procedures? I believe they should have raised it. And I believe this court should consider the fact that it should have been, that it's, that it's not a moot point for us to raise at this point. Well, but before you can pursue an ineffective assistance of counsel theory, there are requirements under Lozada. Are you familiar with the Lozada case? I'm not, Your Honor. Sorry. Well, let me counsel. We appreciate pro bono counsel coming in, but we have to hold pro bono counsel to the same standards we hold anybody who appears before us. And there is a wealth of jurisprudence on ineffective assistance and relating to immigration lawyers who don't do their jobs in front of the immigration courts and before the BIA. And we don't just treat it as a matter of waiver of our requirements. There are some fairly strict standards. And if you're not familiar with the jurisprudence, then I'm afraid that that doesn't speak well of your research into the requirements of representing people in immigration cases in this court. I apologize, Your Honor, but I am responding to the government's request for a remand that did come up in the reply brief of the government. And the government cites the, again, the precedents held by this court and Sinodas-Cruz that that could have changed the outcome of this whole situation vis-a-vis more of the crimes of moral turpitude. Do I understand correctly that you do concede that the issue was not exhausted before the BIA? Is that correct? I'm sorry? Do I understand correctly that you are conceding that the issue of moral turpitude was not exhausted before the BIA? I think that's a fair representation. And when the appeal was made to our court, in the initial opening brief, was the issue of moral turpitude raised there? I know it was in the reply brief, but in the opening brief, was it raised?  Okay. So Judge Fischer has raised these effectively jurisdictional issues that we deal with all the time and that we are required to follow. And you have really two different prongs here before we even get to the modified categorical issues that I know are important to you and your client. To the degree you can address those issues, that would be helpful because they are, in effect, gateways for us to consider the merits of your argument. And again, as the judge... Merits on the crime of moral turpitude. Right. It doesn't necessarily preclude us from reaching the Sintos-Cruz issue. Right. Okay. The opening brief on page 8 goes into a discussion of the sentencing scheme of the California Appeal Code 461. It goes into a discussion of burglary as punishable in the second degree by imprisonment in the county jail not exceeding one year or in the state prison. And... Does it speak of moral turpitude issues? It doesn't explicitly speak, I believe, of moral turpitude issues, but it does talk about... It does talk about, or at least imply, that the Attorney General could have leeway and extend a waiver because of the nature of the crime. In other words, the under 1229BA, cancellation or removal for certain permanent residents, as was brought up in Sintos-Cruz, there were three conditions. One, that the alien was lawfully admitted for permanent residence of not less than five years, has resided in the United States continuously for seven years after having been admitted in any status and has not been convicted of any aggravated felonies. The first and third issues go away because the vehicle or burglary are not aggravated felonies. And as far as the first issue is concerned, Section 1229BD1 does not apply to the five-year requirement because it stops only accrual of any period of continuous residence or continuous physical presence. By its terms, it does not require continuous residence or continuous physical presence. Rather, it requires only lawful admission as a permanent resident. Now, Section 2 does apply to the seven-year requirement. The Part A has no effect on Casas, on the appellant, because he was served with his notice to appear long after he fulfilled the seven-year requirement. He was served his notice to appear, I think, record shows in 2001. And only Part B, which stops the accrual of time upon commission of certain crimes, can possibly affect Casas' case. And Casas was first lawfully admitted in any status in April of 89 when he was granted temporary residence status. His seven-year period began to run at that time. So, assuming argument that his 1999 crime, 1993 crime of vehicle burglary qualifies as some offense under 1227A2, if the permanent stop-time rule contained in Part B of 1229BD1 may be retroactively applied to Casas, it stops the accrual of his seven years of continuous residence after only four years. The question before us is whether Part B applies retroactively to Casas, who pled guilty to the 1993 crime. And there I have to bring in the Sinatra's Cruz, because in the Sinatra's Cruz analysis, where this court looked at what the BIA did in Ingray-Perez, where the BIA said that Part B applies retroactively to crimes committed before the enactment of the Illegal Immigration Reform Act of 1996 without differentiating between convictions obtained after trial or pursuant to a guilty plea. And Perez was decided before the Supreme Court held in INS v. St. Cyr that the Illegal Immigration Reform Responsibility Act did not operate retroactively against aliens who had pled guilty to the portable crimes. What is not contested here is that Casas pled guilty to a crime of vehicular burglary. And the BIA said he was not entitled to a waiver under 212C. And they said even if he was entitled to a waiver under 212C, it didn't make much of a difference because there were two crimes of moral turpitude. In the opening brief, while moral turpitude may not have been officially and explicitly stated, it could have been a tremendous oversight not to say, it was certainly implied, because the fact that he was sentenced to less than one year, 180 days, served only some 62 days, there's no way that that could have been interpreted as a crime of moral turpitude. That crime of 1993 has to go away. His continuous residence is accrued, and he's entitled now to the benefit of Sinotis Cruz. I reserve the rest of my time. All right. Good morning, and may it please the Court. My name is Patrick Glenn, appearing on behalf of Respondent, United States Attorney General Michael Mukasey. Your Honors, the central issue in this case is whether remand to the Board is required, and the government contends that it certainly is. In 2002, the Board determined that Petitioner   In 2012, the Board determined that Petitioner was statutorily ineligible to apply This decision was based on its precedent decision in Madera-Perez, and as Petitioner's counsel noted in that case, the Board held that Part B of the stop-time rule could be applied retroactively to pre-arrear convictions. Four years after the Board's underlying decision in this case, however, this Court decided two cases, Sinotis Cruz v. Gonzalez and Valencia Alvarez v. Gonzalez. In Sinotis Cruz, this Court held that Part B of the stop-time rule could not be applied retroactively to pre-arrear convictions when the alien would have been eligible for discretionary relief at the time arrear became effective. Sinotis Cruz seems to have a bearing on whether Petitioner is in fact statutorily eligible to apply for cancellation of removal. However, issues pertaining to cancellation of removal, including statutory eligibility and whether cancellation of removal should be granted in the exercise of discretion, are delegated by statute to the U.S. Attorney General. As the Supreme Court noted in Florida Power and Light, this Court is not empowered to conduct a de novo review when there has not been an agency determination in the first instance. Because these cases occurred four years after the Board's underlying decision in this case, remand should be required so that the Board may take into account Sinotis Cruz, determine whether it is applicable, and ultimately determine whether, if it is in fact applicable, Petitioner should be granted cancellation of removal. I'm not sure why. What is the Board going to do? Why is it within the Board's competence to decide the question of laws to retroactivity when this Court has already decided that issue? Well, Your Honor, what the Board needs to decide in this case is which case is actually applicable in the first instance, Sinotis or Valencia Alvarez. Sinotis holds explicitly that Part B cannot be applied retroactively if the alien was eligible for discretionary relief at the time arrear became effective, while Valencia Alvarez, while reaffirming the fundamental holding of Sinotis Cruz, notes that if the alien was not eligible for discretionary relief prior to the effective date of arrear, at the effective date of arrear, or post-arrear, then the retroactive application of Part B of the stop-time rule would not be impermissible. So the Board needs to decide in the first instance whether Petitioner was eligible for discretionary relief at the time arrear became effective. There has been no agency determination on that point in the first instance. So the first thing the Board needs to determine in these circumstances is whether Sinotis Cruz applies or Valencia Alvarez. However, leaving the issue... But, Counselor, it seems to me what you're saying is that because we have no authority to review discretionary decisions of the Board, that we likewise are barred from construing the legal framework within which the discretionary decision is made. Is that correct? No, not at all, Your Honor. If this was a clear issue of statutory interpretation, I would undoubtedly concede that this Court has jurisdiction, undoubtedly, to no review of statutory construction. However, I think pursuant to Ventura and pursuant to Thomas that this Court should remand so that the Board can take into account in the first instance the applicability of these cases. If this Court had gotten this issue in 2005 or prior to this Court's decision in Sinotis Cruz, it could have undoubtedly reviewed the decision of the Board. But in these circumstances, I think it should be remanded so that the Board can take into account these decisions in the first instance. All right, but just to clarify, what you're arguing is that it's not up to the Board to decide whether or not Part B is retroactive. It's relying on our two cases, one saying it depends on what the status of the particular petitioner is. Correct. And in this case, what is it that would make him eligible or not? Well, the question, I'm sorry. You do a lot better. Let me finish my question. What is the factual issue, if you will, that the Board needs to decide, factual, legal, in terms of qualification or disqualification status that the Board needs to decide? Eligibility for a relief at the time a waiver became effective. And that would turn on? That would turn on an agency determination of whether, on April 1, 1997, petitioner could have applied for any sort of discretionary relief either under the former rules at 212C or pursuant to the new provisions of cancellation of removal. But they can't use the fact that the stop-time rule precludes him so they don't have to reach that question. Well, Your Honor, Sinotas Cruz says you can apply Part B of the stop-time rule in certain circumstances. Valencia Alvarez says you can apply it retroactively in other circumstances. So the fundamental question, the first one before the Board, would be what circumstances does this case present? Okay. On the record that's presented by this case, what is, is it, or are we talking about the crimes of moral turpitude as to whether those are going to preclude him or not? What are the eligibility factors that the Board has to apply its expertise to? Well, in this case, it would most likely be 212C relief, and he's ostensibly eligible for such relief. The immigration judge thought he would be eligible for relief. The Board assumed that he might be able to be granted a waiver but thought that it was irrelevant. Your Honors, if I may move past the statutory construction issue to a more fundamental point, that no matter what this Court would choose to do in its application of Sinotas Cruz, there has not been, by any stretch of the imagination, a discretionary determination by the agency in the first instance on whether a petitioner is deserving of cancellation of removal. So even if this Court were to take that. I think that we understand that. I think what we're trying, at least I'm trying to get my arms around, is what is the order of remand that you're asking for? Well, I think first I would ask that this Court remand so that it can consider whether a petitioner is statutorily eligible or ineligible. And in the second instance, if this Court were to determine that he was statutorily eligible because of Sinotas Cruz in the first instance without remand to the Board, remand to the Board would still be required so that the Board can make a determination of whether, in the Attorney General's discretion, a petitioner should be granted cancellation of removal. Thus, notwithstanding the statutory construction issue, remand will still be required in this case because there's been absolutely no agency determination regarding the discretionary grant of cancellation of removal, and it is up to the Attorney General, explicitly by the statute in the first instance, to make those determinations. Now, can petitioner raise the crime of moral turpitude debate about whether the two burglaries qualify as crimes of moral turpitude in this remand proceeding? Your Honor, I think that the remainder of the issues raised by petitioner can be disposed of by this Court today. However, importantly, regarding the crimes involving moral turpitude, as this Court noted in questioning of opposing counsel, these issues were not presented to the Board in the first instance. They have not been exhausted. Alternatively, petitioner has not adequately presented them to this Court in his opening brief. And as this Court has noted even very recently – How about just answering my direct question, though? That is, would it be open, if we say it wasn't exhausted, would it be open before the Board in this remand proceeding for counsel to raise the modified categorical approach or put the government to its proof that these were, in fact, crimes of moral turpitude? Petitioner's counsel could certainly request additional briefing on other issues. How the Board would ultimately deal with those issues, I think, I certainly couldn't speak to. He could certainly raise those in briefing before the Board. But at the same time, those issues, I think, should be disposed of by the Court today. They're unexhausted, and alternatively, they've been waived. Well, that's not disposing of them on the merits. That's saying we don't reach the merits. If we disagreed on the waiver, then what would we do? Then decide it wasn't exhausted? And if it's not exhausted, then it goes back to the Board to address it in the first instance? The Board could if it chose, and if additional briefing was established, which Petitioner can request, I think the Board would be able to do so. Are you familiar with the Socop-Gonzalez v. INS? Excuse me? Are you familiar with the case of Socop-Gonzalez v. INS? I'm not, Your Honor. I'm interested in the government's position on this. My reading of that case suggests that if the BIA addressed the issue of moral turpitude, whether or not it was raised, that it can be deemed exhausted. Do you have any position on that? Does the government have any position? Your Honor, I don't. The Board addressed the crimes involving moral turpitude only to the extent, excuse me, that it noted that there were, that the 212C waiver or the relevance of the 212C waiver would not ultimately affect removability. The Board didn't address the issue of whether clear and convincing evidence supported the order of removal or whether the crimes were, in fact, crimes involving moral turpitude. So I think in this case, although I understand what you're saying about Socop, that doesn't apply in this instance because the Board didn't address the issue in the manner that Petitioner now seeks to have the issue raised before this Court. I'm a little puzzled by that because at least my notes on the BIA's decision, they affirmatively stated that the vehicular burglary is, and I'm quoting, referred to in Section 212A2A1I of the Act since it was a crime involving moral turpitude that rendered him inadmissible under that section. That seems to me to have addressed at least the issue of moral turpitude in connection with that particular crime. Do you disagree with that? I would disagree, Your Honor. But I would further say that this Court's already stated relatively definitively in Yee v. INS that vehicular burglary pursuant to California Penal Code Section 459 is a crime involving moral turpitude. I don't think there should be a debate on that issue. The sole issue is whether it's been exhausted, and I would contend again that it hasn't been exhausted, that his removability as an individual convicted of two crimes involving moral turpitude was not challenged before the Board, and he didn't raise a sufficient challenge to that issue before this Court, even if it hadn't been exhausted. Does the government agree that the categorical Penal Code Section 459, that that is not sufficient to dispose of the issue of moral turpitude? Do you agree with that? Your Honor, I don't exactly understand your question. What I'm saying is, does the government agree that it's not going to get there using the categorical approach? You can have a person entering a vehicle without any intent, rather with intent to commit a grand or petty larceny or any felony, i.e., a burglary without committing a crime of moral turpitude. Do you agree with that? Without knowing a great deal on the specific issue, I would agree with that, but I'd also again direct the Court's attention to Yee v. INS where it said that vehicular burglary pursuant to this same section of the California Penal Code was, in fact, a crime involving moral turpitude. What's the case? Yee v. INS, Your Honor, 214 Federal. Wait a minute. Just give me the name. Yee, Y-E. Oh, Y-E. I'm sorry. I thought you were saying Nee. Yee v. INS, Your Honor, at footnote 5, the Court notes that in the Ninth Circuit, a conviction pursuant to Section 459 is, in fact, a crime involving moral turpitude. Now you can give me the cite because you don't cite that in your brief. 214 Federal 3rd, 1128, 1134, note 5. 214. I have law clerks that take notes that fast, so slow it down for the slow-minded judge. Yes, Your Honor. 214 Federal 3rd, 1128, 1134, note 5. And that's a 2000 decision of this Court. And you're saying that the facts of that case, I'm not familiar with either. I don't remember it was cited in any of the briefs. But you're saying that in the facts of that case, that this Court held on all fours that 459, any conviction under 459 is per se a conviction of a crime of moral turpitude? Categorical, yes. Under the categorical approach. No, it didn't. Yee actually didn't address that. It simply noted that vehicular burglary, which is part of the aspect of burglary criminalized under section 459, would qualify as a crime involving moral turpitude, and that the Court had always held that it was a crime involving moral turpitude. So you said this was a footnote? Well, correct. Okay, well, we can look into that. I don't see how this becomes a crime of moral turpitude using the categorical analysis. The question is really whether under the modified categorical analysis it works. And looking at the 1993 conviction, the information does not talk about anything that would constitute moral turpitude in the minute order. No indication whether he intended to commit larceny or another felony. Under the 2000 conviction, it says in the information he entered the vehicle, the doors of which being unlocked, with the intent to commit larceny and any felony. But it didn't say a crime of moral turpitude. In the abstract of judgment where he pled guilty, there was no indication whether he intended to commit larceny. I appreciate your help. How do you get there under either the categorical analysis or the modified categorical analysis to show that this Petitioner committed a crime of moral turpitude sufficient to put him in jeopardy in this statute? Your Honor, I see my time is about to expire. That's all right. I'd like to answer your question. Go ahead and answer the question. Your Honor, at this time, I don't believe I could fully answer your question as you'd like. I'd be more than happy to submit additional briefing on the issue. But I would like to again state that this issue has not been exhausted before the Board. And the way it's been raised in the opening brief is not adequate to avoid a waiver. I would otherwise, though, be happy to address the Court's concerns in supplemental briefing if it's so desired. We'll let you know. Thank you. If there are no further questions, thank you. Thank you. Thank you, Your Honor. I think the opposing counsel has answered this Court implicitly that you can't. You can't get there on the modified or the categorical or modified categorical approach for the 1993 crime or the 2000 crime. You can't show that he had the intent, criminal intent, to take property based upon what's in the record. What's in the record is a complaint. What's in the record is an abstract of judgment. What's in the record is a statement of a plea, no plea agreement, et cetera, et cetera. You just can't extrapolate that far. So you can't, under the modified or the categorical, get there that these are crimes of moral turpitude. So the remedy is to do what, in your view? I'm sorry, sir? So the remedy is to do what? The remedy is to release him with all due respect to this honorable Court. He's been in jail for almost seven years. He should not suffer because a fellow counsel made maybe a strategic procedural error. That at the end of the day, he's going to come out anyway. Wait a minute. He's being released from what? He should be released from custody based upon the fact that he's not deportable. Based upon the fact that Sinaitis Cruz of this Court, and the case is analogous, this case is so analogous to Sinaitis Cruz. Counsel here cites Valencia Alvarez. It doesn't come close. It doesn't come close. Sinaitis Cruz is what counts. He did plead out. He served less than 180 days. If he remanded, we're against remanding. If he remanded back to the BIA, there's no way that they're going to find that under the categorical or the modified categorical approach, these were crimes of moral turpitude. We don't know that because it wasn't raised before them. It wasn't raised before them, but the statement that the Court didn't deal with it, the BIA didn't deal with it, is wrong. The offense is referred to in section of the act, and it was a crime involving moral turpitude. That was their basis. Their basis was that 99-3 was moral turpitude. Their basis was that he had two crimes going at him with moral turpitude. Counsel, all right. That's fine. I read the footnote where they said they hadn't challenged it, so generally when people don't challenge things in front of us, we accept them as seen. I just want to quote, if I may close, Your Honor, deportation is a punishment. We understand. It's a punishment. All right. Thank you for your time. Thank you. All right. The case argued is submitted. Thank you, counsel. All right. We'll take the last cases on calendar, which are Kim, excuse me, United States v. Kim and United States v. Long.
judges: Farris, Fisher, Smith